# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, as Personal Representative of the Estate of Roger Rand, | No. C21-4020-LTS |
| Creditor-Appellant, | **MEMORANDUM OPINION AND ORDER ON BANKRUPCTY APPEAL** |
| vs. | |
| VERA T. WELTE TESTAMENTARY TRUST, | |
| Debtor-Appellee. | |

## I.    INTRODUCTION

This case is before me on an appeal (Doc. 1) by creditor Security National Bank of Sioux City, Iowa, as personal representative of the Estate of Roger Rand (Estate), from an April 22, 2021, decision of the United States Bankruptcy Court for the Northern District of Iowa in favor of debtor-appellee Vera T. Welte Testamentary Trust (Trust).[1] The Estate argues that the bankruptcy court committed error by (1) finding a mortgage future advances clause unenforceable, (2) improperly calculating the remaining balance on debt obligations owed to the Estate, (3) finding that the Trust owed no further payments on those debt obligations and, as a result of these findings, (4) sustaining the Trust's objection to the Estate's proof of claim and denying the Estate's motion to dismiss the Trust's chapter 12 bankruptcy petition. Doc. 4. At my request (Docs. 10, 17), the parties have filed supplemental briefing on the issues of the *Rooker-Feldman* doctrine (Docs. 13, 14, 15) and issue or claim preclusion (Docs. 18, 19).

---

[1] The bankruptcy court's decision is on this court's docket at Doc. 1 at 4-19.

## II. SUMMARY OF RELEVANT FACTS

This dispute arises from a series of loan transactions between Roger Rand (Roger) and Frank Welte II (Frank). Doc. 4 at 9. While the parties executed promissory notes, Frank borrowed more money from Roger than what is reflected on those notes. *See, e.g.,* Doc. 4 at 10; Doc. 5 at 20. Frank used the borrowed funds to finance his farming operation on land owned by the Trust and leased to Frank. *Id.* at 10. Frank is the only beneficiary of the Trust and his brother, Claire Welte, Jr. (Claire), is the Trustee. *Id.*

The promissory notes were secured by various real estate mortgages. Claire signed the mortgages in his capacity as Trustee. Doc. 4-1 at 331-80. Claire testified that when he signed these documents, he believed he was pledging only the Trust income for that year, as that is all he believed he could pledge as Trustee. Doc. 2-2 at 84. He claims that he did not read the documents before signing them. *Id.* at 81. Each mortgage Claire signed as Trustee contained a future advances clause[2] under the bold heading "Obligations." Doc. 4-1 at 333-34, 342-43, 351-52, 361-62, 372. The clause in the most recent mortgage states:

> **Obligations.** This Mortgage secures the following . . . . All other obligations of Borrower and/or Mortgagors to Mortgagee, now existing or hereafter arising, whether direct or indirect, contingent or absolute and whether as maker or surety, including, but not limited to, all future advances or future obligations of Borrower and/or Mortgagor under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage, whether or not this Mortgage is specifically referred to in the other evidence of debt and whether or not such future advances or obligations are incurred for any purpose that was related or unrelated to the purpose of this Mortgage, and amounts advanced and expenses incurred by Mortgagee pursuant to this Mortgage, and any and all obligations of Borrower contained in the Loan Agreement dated July 17, 2015 and/or Security Agreement dated July 17, 2015 entered into between Mortgagee and Borrower.

---

[2] Future advances clauses are commonly called "dragnet clauses." *Freese Leasing, Inc. v. Union Tr. & Sav. Bank, Stanwood*, 253 N.W.2d 921, 923 (Iowa 1977).

*Id.* at 372.

Roger died on August 29, 2016.  Doc. 4 at 10.  On March 24, 2017, his Estate initiated a state court "foreclosure action against the Trust farm ground pledged as security for Frank's debts."  *Id.* at 11; *see also Security Nat'l Bank of Sioux City v. Welte*, No. EQCV174899 in the Iowa District Court for Woodbury County (the Foreclosure Action).  The Estate named both Frank in his personal capacity and Claire in his capacity as Trustee as defendants in that action.  Doc. 13-1 at 3.  The real property subject to that case included approximately 160 acres of farmland owned by the Estate, which "had been pledged as security for Frank's debts."  Doc. 13 at 4.

Trial in the Foreclosure Action was set to commence on June 25, 2019.  Doc. 18 at 13.  However, the Trust filed its chapter 12 bankruptcy petition eight days before trial, on June 17, 2019.  *Id.*; Doc. 4-1 at 68-70.  In light of this bankruptcy filing, the bankruptcy court stayed the Foreclosure Action as to Claire, the Trustee.  Doc. 13-1 at 3.  The Foreclosure Action proceeded to trial against the remaining the defendants on August 27, 2019.  *Id.*

In the bankruptcy case, the Estate filed a motion to dismiss the Trust's petition on grounds that the Trust is not a business trust, as required under chapter 12.  Doc. 4-1 at 82-86.  The Estate also filed a proof of claim in the bankruptcy case based on the allegedly outstanding mortgage on the real estate pledged as security by Claire, as Trustee.  *Id.* at 30-67; Doc. 4 at 11.  The Trust objected to the proof of claim on October 9, 2019.  Doc. 4-1 at 94-95.

On October 16, 2019, the state court issued a ruling in the Foreclosure Action as to the amount, if any, Frank owed in addition to the face amount of each promissory note.  Doc. 13-1 at 12-13, 17.  The ruling expressly addressed this issue of "whether all the disbursements are subject to the terms of the notes and whether the mortgages referenced above secure all of the debt, including the amounts advanced in excess of the face amount of the notes."  *Id.* at 13.  The court answered this question affirmatively,

3

holding that "the mortgages referenced above do secure the entire amounts owed on these notes." *Id.* at 14. Based on this determination, the court concluded:

> [T]he Plaintiff is entitled to judgment against the Defendants, other than Claire J. Welte Jr. as trustee of the Vera T. Welte Trust for whom a bankruptcy stay is in effect, for the amount of $3,222,161.81 plus interest at the rate of $947.28 from August 28, 2019, to October 15, 2019 (the date of this judgment) plus post judgment interest at the rate of 12% per annum from October 16, 2019, until paid, plus the court costs herein. The Court further finds that subject to the claims of the Commodity Credit Corporation, the Plaintiff is entitled to a judgment of foreclosure on the two mortgages referenced herein which secure the debt owed.

*Id.* at 15.

On November 17, 2020, the bankruptcy court held a hearing on the Estate's motion to dismiss the Trust's chapter 12 petition and the Trust's objection to the Estate's proof of claim. Doc. 4-1 at 131–287. In a ruling filed April 22, 2021, the bankruptcy court made note of the Foreclosure Action but did not otherwise address it. Doc. 1 at 7. The bankruptcy court found that the mortgages were enforceable against the Trust under Iowa law. *Id.* at 10–12. The court then addressed the dragnet clauses and found that they are not enforceable under Iowa law because the Trustee (Claire) did not have knowledge of the excess amounts loaned to Frank. *Id.* at 12–16. The bankruptcy court therefore determined that "the mortgages are limited to the notes amount listed and not enforceable against the excess loans." *Id.* at 15.

The bankruptcy court relied upon the Trust's expert's findings, calculated from the face amount of the notes and the Trust's interest calculations,[3] to find that the Trust no longer owed any debt to the Estate and, indeed, had overpaid the Estate. *Id.* at 17. Based on this finding, the bankruptcy court denied the Estate's motion to dismiss, finding

---

[3] The Trust's expert testified that if he would have taken the "excess loans into account," he would have arrived at the same underpayment calculation reached by the Estate's expert. Doc. 2-2 at 132-33.

that the Estate had no pecuniary interest in the bankruptcy proceedings and, therefore, no standing to assert a motion to dismiss. *Id*. at 18. The Estate filed its notice of appeal on May 5, 2021. Doc. 4 at 12.

After the bankruptcy court filed its ruling, the Iowa Court of Appeals filed a decision in the Foreclosure Action. *Security Nat'l Bank of Sioux City v. Welte*, No. 20-0524, 2021 WL 2453107 (Iowa Ct. App. June 6, 2021). The appellate court noted that the trial court made findings of fact regarding the excess loan amounts pursuant to the dragnet clauses and the appropriate interest calculations. *Id*. at \*2. The court affirmed the district court's finding "that interest rate set forth in the notes of 8% followed by a default rate of 12% should apply to the amounts advanced by Mr. Rand in excess of the amounts stated in the Promissory Note documents." *Id*. at \*\*2-3. The court also affirmed the district court's determination that the dragnet clauses were enforceable, stating that the "dragnet clauses in the two mortgages were enforceable as to Frank and [Frank's corporation BJM, Inc.]." *Id*. at \*3. Thus, the Iowa Court of Appeals found that "the district court properly applied the dragnet clause and determined the proper amount owed by the appellants." *Id*. at \*6.

## III.   DISCUSSION

The bankruptcy court's findings of fact are reviewed for clear error while its conclusions of law are reviewed *de novo*. *Tri-State Financial, LLC v. First Dakota Nat'l Bank*, 538 F.3d 920, 923-24 (8th Cir. 2008). "An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." *Mathenia v. Delo*, 99 F.3d 1476, 1480 (8th Cir. 1996). However, "[w]here the determinative question is purely legal, our review is more accurately characterized as *de novo*." *United States v. Ameren Missouri*, 9 F.4th 989, 1008 (8th Cir. 2021) (cleaned up).

This appeal presents seemingly conflicting outcomes, as between the state court and the bankruptcy court, regarding the amounts owed on the same promissory notes,

albeit owed by different debtors. Because the state court found the notes had not been fully satisfied, while bankruptcy court found that they had been overpaid, I ordered several rounds of briefing on various issues in an effort to reconcile or untangle those outcomes. These issues include the *Rooker-Feldman* doctrine, the Full Faith and Credit Clause and the preclusive effect, if any, that the state court judgment has on this case. I will address these issues in turn.

## A.    *The Rooker-Feldman Doctrine*

I first asked the parties to address whether the *Rooker-Feldman* doctrine applies in this case. "The *Rooker–Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003) (internal citations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 283–84 (2005). Thus, unless the state court decision has been invalidated, the federal court cannot act as "super" appeals court. As one federal district court stated:

> Plaintiff's claims are not cognizable under § 1983. In essence what [plaintiff] is seeking is the modification or overturning of the state court order deciding the issue of custody and child support. Other than the United States Supreme Court, federal courts are without jurisdiction to adjudicate claims which seek review of a state decision on the ground that the decision violated the federal constitutional rights of one of the parties. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86, 103 S. Ct. 1303, 75 L. Ed.2d 206 (1983); *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 296, 90 S. Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923). *See also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995); *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994).

*Owens v. Welch*, Civil No. 09-2011, 2009 WL 1203716, at *3 (W.D. Ark. 2009) (unpublished).

The Estate generally argues that the *Rooker-Feldman* doctrine applies to divest the federal courts of subject matter jurisdiction. Doc. 13 at 6. The Trust responds by arguing

that the *Rooker-Feldman* doctrine does not apply because it was not a party to the state court ruling in the Foreclosure Action due to the stay issued by the bankruptcy court. Doc. 14 at 9-10. Further, the Trust argues that the state court ruling did not address the same issues as the bankruptcy court's order. *Id.* at 11. The Estate responds that the bankruptcy court's order does address the same issues as the state court—the amount owed on the mortgages issued by the Rand Estate and signed by Frank and Claire in their respective capacities. Doc. 15 at 8-9.

After reviewing the parties' submissions, it became clear that the *Rooker-Feldman* question is murkier than it originally appeared. The Eighth Circuit has held that "if a *Rooker-Feldman* issue is difficult, but a plaintiff's claim is straightforwardly barred by preclusion law under [28 U.S.C.] § 1738 if the federal court has jurisdiction," then a federal court may "decide a question of preclusion without first resolving a murky problem under *Rooker-Feldman*, because our inquiries under preclusion law and the *Rooker-Feldman* doctrine would similarly overlap." *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234-35 (8th Cir. 2013). Thus, I will next determine if this case can be resolved based on § 1738, the Full Faith and Credit Clause, and the Iowa preclusion law it directs me to apply.

## B.    *Full Faith and Credit Act and Preclusion*

"Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 415 (1980). The Full Faith and Credit Act, 28 U.S.C. § 1738, directs that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." Thus, federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in

7

which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984).

In practice, this means that "when assessing the preclusive effect of a state court judgment, [federal courts] apply that state's law governing preclusion." *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1137 (8th Cir. 2019). In response to my request for briefing on the preclusion issue, the Estate argues that issue preclusion applies under Iowa's preclusion law. Doc. 18 at 5. The Trust makes several arguments to the contrary. First, it contends that preclusion is not properly before me because the Trust briefly mentioned preclusion in its *Rooker-Feldman* supplemental brief and the issue was not otherwise discussed by the Estate or during the bankruptcy court proceedings. Doc. 19 at 4. Second, it argues that Iowa's preclusion requirements have not been met. *Id.* Finally, it makes a policy argument that giving the state order preclusive effect against the Trust would undermine the bankruptcy stay. *Id.*

I will start the analysis by considering whether Iowa law allows me to consider the preclusive effect of a previous ruling when the parties themselves did not raise that issue from the outset.

## C.      *Issue Preclusion Under Iowa Law*

The Trust's primary argument is that "issue preclusion is not properly before the Court, so it cannot be used as a basis for the Court's decision on appeal." Doc. 19 at 7. The Trust notes that the only reference any party made to the state mortgage foreclosure action governing the mortgages at issue here was a footnote in the Estate's original appeal brief asking me to take judicial notice of the Iowa Court of Appeals decision. *Id.* at 6.

### 1.      *Does the failure to timely raise preclusion strictly bar application of that doctrine under Iowa law?*

The only Iowa case the Trust cites in support of its argument that preclusion is not properly before me is *Fischer v. City of Sioux City*, 654 N.W.2d 544 (Iowa 2002). It

8

argues that *Fischer* recognized a rule that "regardless of how res judicata is raised, it 'must be plead and proved by the party asserting it.'" Doc. 19 at 5 (quoting *Fischer*, 654 N.W.2d at 548). *Fischer* addresses the question whether issue preclusion must be pleaded when a plaintiff uses it offensively. 654 N.W.2d at 547-50.

The plaintiffs in *Fischer* did not plead or raise the theory of issue preclusion until they filed a motion for partial summary judgment "just before trial was to begin." *Id.* at 546. On appeal from the trial court's grant of that motion, the Iowa Supreme Court started its analysis by describing the two methods by which issue preclusion may be used:

> As we have noted in prior cases, the doctrine may be utilized in either a defensive or an offensive manner.
>
> > The phrase "defensive use" of the doctrine of collateral estoppel is used here to mean that a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense.
> >
> > On the other hand, the phrase "offensive use" or "affirmative use" of the doctrine is used to mean that a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim.
> >
> > In other words, defensively a judgment is used as a "shield" and offensively as a "sword."

*Id.* at 546-47 (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)). The Court then noted that an attempt to use issue preclusion offensively raises two additional questions: (1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues of its negligence and proximate cause, and (2) whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues." *Id.* at 547 (citing Hunter, 300 N.W.2d at 126).

9

In addressing the plaintiffs' last-minute assertion of offensive issue preclusion in *Fischer*, the Court stated:

> If a party fails to assert offensive issue preclusion at the earliest practicable time, the unfairness already inherent in offensive issue preclusion will only be exacerbated. That is why, we believe, the general rule is that issue preclusion—whether offensive or defensive—must be pled and proved by the party asserting it.

*Id.* at 548. The Court noted that while Iowa's notice pleading rules do not require that a party identify a specific legal theory, a plaintiff's petition does have to "apprise a defendant of the incident out of which the claim arose and of the general nature of the action." *Id.* at 549-50 (cleaned up). The Court found that "[t]he petitions in this case cannot be construed broadly enough to encompass offensive issue preclusion because they did not identify either the incident giving rise to the claim of issue preclusion or the general nature of the claim." *Id.* at 550. The Court noted that "the plaintiffs' claim of issue preclusion is based on an entirely different incident" than the incident described in their petition, as that claim was based on a 1999 flood while the allegedly-preclusive judgment was entered in 1996. *Id.* The Court further explained that "[t]he 'general nature' of the plaintiffs' present claims, *i.e.*, issue preclusion . . . could not be gleaned from the petition, which alleged elements of negligent design—not issue preclusion." *Id.*

Under these facts, which also included the trial court's denial of the city's request to continue trial, the Court held that "the city was denied adequate time to deal with issue preclusion after the district court ordered it to be applied and the date the trial began (one week)." *Id.* The Court concluded that "[t]he potential unfairness in applying issue preclusion, discussed above, combined with the lack of adequate time to meet this theory demands the case be reversed and remanded." *Id.*

The rather apparent unfairness present in *Fischer* is not present here. The Trust was an active participant in the underlying Foreclosure Action until eight days before trial was scheduled to begin when it sought bankruptcy protection. Thus, it is not a stranger to that action. Moreover, the compressed amount of time that resulted from the

trial court's denial of the city's motion to continue trial in *Fischer* is not a factor here. The Estate filed its proof of claim (Doc. 1 at 4) in the Trust's bankruptcy proceeding on August 23, 2019. The Trust objected to the proof of claim on October 9, 2019, and listed a disagreement about the amount of debt still owed as an objection. Doc. 4-1 at 94-95. The state court's ruling in the Foreclosure Action was then filed October 16, 2019. Thus, that ruling has been known to the parties for years. Moreover, I first raised a concern regarding the implications of the state court ruling when I ordered *Rooker-Feldman* briefing on March 21, 2022. *See* Doc. 10. I then requested additional briefing on the preclusion issue on July 7, 2022. Doc. 17. Unlike the defendant in *Fischer*, the Trust has had ample time to consider and address the potential preclusive effect of the state court ruling.

The Trust also argues that "extending a judgment to the Debtor when the Debtor was not involved in the trial or judgment . . . undermines the protections" of the automatic stay. Doc. 19 at 13. This is not a persuasive argument. The automatic stay can be extended to non-debtors when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Ritchie Capital Management, L.L.C. v. Jeffries*, 653 F.3d 755, 762-63 (8th Cir. 2011) (cleaned up). Even if this situation did not meet that standard, the Eighth Circuit has stated that 11 U.S.C. § 105, which "gives the bankruptcy court the power to issue orders necessary or appropriate to carry out the provisions of Title 11" including injunctive relief, is available when "a suit is brought against a third party rather than against the debtor or the debtor's property." *In re Panther Mountain Land Development, LLC*, 686 F.3d 916, 926-27 (8th Cir. 2012) (cleaned up). Thus, the Trust had options available to expand the scope of the bankruptcy stay if it was concerned about the outcome of the Foreclosure Action.

The Eighth Circuit Bankruptcy Appellate Panel (BAP) addressed a similar situation in *In re Phillips*, 500 B.R. 570, 577 (8th Cir. BAP 2013). In that case, the

11

debtor had been a defendant in a state court action when he elected to seek bankruptcy protection, thus staying the case against him. *Id*. at 576. The case proceeded to trial against the other defendants and the bankruptcy court ultimately granted the state court's order preclusive effect against the debtor. *Id*. at 576-77. The BAP expressly rejected the debtor's argument that giving preclusive effect to the state court's order amounted to a violation of the automatic stay. *Id*. at 577. The same reasoning applies here.

The Supreme Court has cautioned that "depriving state judgments of finality would violate basic tenets of comity and federalism." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 478 (1982) (cleaned up). While it would have been a better practice for the Estate to affirmatively raise issue preclusion earlier in this case, I find that it is necessary to consider the merits of the Estate's issue preclusion argument under Iowa law.

### 2.     *Does issue preclusion apply under Iowa law?*

Under Iowa law, the purpose of issue preclusion is to prevent "a party from relitigating in a subsequent action issues raised and resolved in a previous action." *Lemartec Eng'g & Constr. v. Advance Conveying Techs.*, LLC, 940 N.W.2d 775, 779 (Iowa 2020) (cleaned up). When "a particular issue or fact is litigated and decided, the judgment estops both parties from later litigating the same issue." *Id*. (cleaned up). "Issue preclusion applies to both factual and legal issues raised and resolved in a previous action." *Id*.

Iowa no longer requires mutuality or privity between the parties. *Clark v. State*, 955 N.W.2d 459, 465 (Iowa 2021). As noted above, Iowa courts identify whether the party alleging preclusion is using it offensively or defensively, as a party relying on offensive preclusion must prove two additional elements. *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 104 (Iowa 2011). Here, the Estate acknowledges that it seeks to use preclusion offensively. Doc. 18 at 8. Thus, I will review the offensive issue preclusion elements under Iowa law:

(1) issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment; (5) whether the opposing party was afforded a full and fair opportunity to litigate the issues; and (6) whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues.

*Clark*, 955 N.W.2d at 465-66 (cleaned up). The Eighth Circuit has provided guidance for reviewing the facts in an underlying state case when making a preclusion determination:

> bankruptcy courts and state trial courts operate within a framework governed not only by law and procedure, but also by the informed choices that the parties make as expressed clearly to the court and to one another. As such, and in general, we do not make preclusion determinations in the abstract or in a vacuum. Rather, we look to see what the underlying court actually said and what the parties communicated to one another and to the court about what they understood to be at issue in the underlying proceeding.

*First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1137 (8th Cir. 2019).

The Estate argues that the facts of this situation meet each element for offensive issue preclusion. Doc. 18 at 8-16. The Trust argues that the Estate cannot prove elements (1) and (5). Doc. 19 at 11-12. The burden is on the Estate to prove each element of issue preclusion. *Clark*, 955 N.W.2d at 465-66.

### a. Identical issues

The Trust argues that "the claims presented in the State Court Action were not the same as those in the Bankruptcy Court. The issues were also not the same." Doc. 19 at 11. The Trust states that "the State Court Action determined what Frank Welte owed to the Rand Estate[,] while the Bankruptcy Court determined how much, if any, of the debt to the Rand Estate, was secured by the Trust." *Id.* The Estate points out that "[t]he state court ruled that the dragnet clauses contained in the mortgages were enforceable and that

13

the mortgages secured all of the debt, including the amounts advanced in excess of the face amount of the promissory notes." Doc. 18 at 9. Meanwhile, the bankruptcy court ruled that "the future advance clauses in the documents fail to meet the legal standard. Thus, the mortgages are limited to the notes amount listed and not enforceable against the excess loans . . . . At a minimum, there is no debt left to pay." *Id.* at 10 (quoting the bankruptcy court ruling, doc. 1 at 15, 17). Thus, the Estate argues, "[a]fter the state court had already determined that the dragnet clauses were enforceable and that the Rand Estate was owed a substantial sum of money, the Bankruptcy Court reconsidered the exact same issues and made conclusions diametrically opposite to the conclusions of the state court." Doc. 18 at 10.

Under Iowa law, "the issue-preclusion question centers on a determination of the proper level of generality to be applied in determining the scope of an 'issue' for preclusion purposes." *Lemartec*, 940 N.W.2d at 786-87. In *Lemartec*, the Court focused on the fact that the original and subsequent claims were based on breach of contract but "arose at a different time based on different breaches." *Id.* at 787. In *Soults Farms*, the Court found that the issue in two cases was the same, even though the two cases were based on different mortgages executed in separate transactions. *Soults Farms*, 797 N.W.2d at 104-05. This is because there was one underlying legal question to be answered by the two cases: whether the mortgage executor had the power to unilaterally sign for an Iowa farming corporation. *Id.* at 97, 104.

Here, the state court in the Foreclosure Action reviewed four promissory notes and associated mortgages between Roger and "the borrowers." Doc. 13-1 at 4-6. The notes are dated March 1, 2013, March 26, 2014, July 17, 2014, and July 17, 2015. *Id.* The bankruptcy court also reviewed four promissory notes for which "the Trust executed mortgages pledging trust property as additional security," dated March 1, 2013, March 26, 2014, July 17, 2014, and July 17, 2015. Doc. 1 at 6-7. In describing the notes and mortgages at issue, it is clear that both courts were addressing the same notes, the same mortgages and the same loan advances. *See* Doc. 13-1 at 4-6; Doc. 1 at 6-7.

14

The state court reviewed the dragnet clauses in each note, specifically citing the clause from the most recent mortgage (dated July 17, 2015):

> b) all other obligations of Frank Welte II to Roger Rand, now existing or hereafter arising, whether direct or indirect, contingent or absolute and whether as maker or surety, including, but not limited to, all future advances or future obligations of Frank Welte II under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage, whether or not such future advances or obligations are incurred for any purpose that was related or unrelated to the purpose of the Mortgage, and amounts advanced and expenses incurred by Frank Welte II pursuant to this Mortgage and any and all obligations of Frank Welte contained in the Loan Agreement dated July 17, 2015, and/or Security Agreement dated July 17, 2015, entered into between Frank Welte II and Borrower.
>
> Said mortgage also provides that Roger Rand has the right to pay any of the obligations of Frank Welte II regarding the property, including taxes, to protect his interest in the property.

Doc. 13-1 at 8. The bankruptcy court cited the dragnet clause from a 2011 note as an example of the clause in each mortgage:

> b. All other obligations of Borrower and/or Mortgagors to Mortgagee, not existing or hereafter arising, whether direct or indirect, contingent or absolute and whether as maker or surety, including but not limited to, future advances and amount and expenses incurred by Mortgagee pursuant to this Mortgage and any and all obligations of Borrower contained in the Loan Agreement dated March 1, 2011 and/or Security Agreement dated March 1, 2011 entered into between Mortgagee and Borrower.

Doc. 1 at 15. As noted in the background section of this order, the bankruptcy court record also contains the dragnet clause from the most recent mortgage:

> b. All other obligations of Borrower and/or Mortgagors to Mortgagee, now existing or hereafter arising, whether direct or indirect, contingent or absolute and whether as maker or surety, including, but not limited to, all future advances or future obligations of Borrower and/or Mortgagor under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Mortgage, whether or not this Mortgage is

15

specifically referred to in the other evidence of debt and whether or not such future advances or obligations are incurred for any purpose that was related or unrelated to the purpose of this Mortgage, and amounts advanced and expenses incurred by Mortgagee pursuant to this Mortgage, and any and all obligations of Borrower contained in the Loan Agreement dated July 17, 2015 and/or Security Agreement dated July 17, 2015 entered into between Mortgagee and Borrower.

Doc. 4-1 at 372. The bankruptcy court then recognized that "the Rand Estate initiated a foreclosure action on the Trust Land pledged as security for Frank's debts" when he failed to repay them, but the court did not address the Foreclosure Action further. Doc. 1 at 7.

Both the state court and the bankruptcy court noted that they were interpreting the mortgage foreclosure provisions of Iowa Code Chapter 654. Doc. 13-1 at 10; Doc. 1 at 13. Both courts cited *Freese Leasing, Inc. v. Union Trust Sav. Bank*, 253 N.W.2d 921, 927 (Iowa 1977), as establishing the precedent that Iowa allows dragnet clauses and such clauses "will be enforced to the extent it appears to have been within the intent of the parties." Doc. 13-1 at 11-12; Doc. 2-1 at 13-15. Here, the state court concluded that, "[i]n looking at the ledgers for each note, at no time was the face amount of any of the notes advanced to the Defendants at a given time." Doc. 13-1 at 12. Instead, for each note, "the total amount of the disbursements made to the Defendants far exceeded the face amount of the note." *Id.*

The state court noted that, at trial, the defendants did not present evidence "to dispute that the amounts advanced as they relate to any of the note were not loaned by Mr. Rand to them. Instead, the [d]efendants attempt[ed] to argue that since [the Estate] admits that the Defendants have repaid more than the face amount of each note, that the notes must have been satisfied." *Id.* at 13. The Trust presented these same arguments to the bankruptcy court: "the mortgages must be limited to no more than the note amounts" and "the underlying debt has in fact, already been paid in full." Doc. 1 at 10. During trial in the Foreclosure Action, the defendants "did not present any evidence to

dispute that the disbursements in excess of the face amount of the notes claimed by the Plaintiff were in fact made." Doc. 13-1 at 13. Thus, since there was no dispute that the excess disbursements were in fact made, the state court observed that "[t]he issue in this case is whether all the disbursements are subject to the terms of the notes and whether the mortgages referenced above secure all of the debt, including the amounts advanced in excess of the face amount of the notes." *Id.*

The state court found that not only did the mortgages "secure the entire amounts owed on these notes," but determined that "the parties' intent would have been that any additional sums loaned would have also been at an initial rate of 8% followed by a default rate of at least 12%" due to the interest terms being identical on each note. *Id.* at 13-14. Thus, as noted above, the state court ruled that the Estate:

> is entitled to judgment against the Defendants, other than Claire J. Welte Jr. as trustee of the Vera T. Welte Trust for whom a bankruptcy stay is in effect, for the amount of $3,222,161.81 plus interest at the rate of $947.28 from August 28, 2019, to October 15, 2019 (the date of this judgment) plus post judgment interest at the rate of 12% per annum from October 16, 2019, until paid, plus the court costs herein.

*Id.* at 15. The court based this total amount and interest rate finding on the dragnet clauses and the interest rates of the notes. *Id.* at 5-6; 13-14.

During the bankruptcy court hearing in November 2020,[4] the Trust stated its arguments were "that the mortgages are invalid as they were made under duress or made in violation of the trust agreement" and, alternatively, "the debt that [the Estate is] alleging has already been paid off based on [the Trust's] calculations of how that debt has accumulated over the years." Doc. 2-2 at 9. The Trust's accountant testified that his

---

[4] The transcript of the bankruptcy hearing indicates that the parties briefed the issues following the hearing (Doc. 2-2 at 151), but those briefs are not in the record on appeal (Doc. 2-1 at 1-2). Thus, I must rely on the transcript of the hearing and the court's discussion of the Trust's arguments in its order.

conclusion that the mortgages were overpaid "disregarded or didn't take into account what [the Estate's accountant] referred to as excess loans." *Id.* at 132.

In its ruling, the bankruptcy court noted that "[t]he Trust argues that even if the mortgages are valid to some degree, they are limited to no more than the face value of the notes." Doc. 1 at 12. The court then proceeded into an analysis of the dragnet clauses pursuant to Iowa law. *Id.* at 12-13. After summarizing the applicable facts and law, the bankruptcy court concluded that "the future advance clauses in the documents fail to meet the legal standard. Thus, the mortgages are limited to the notes amount listed and not enforceable against the excess loans. *Id.* at 15.[5]

As noted above, in arguing that the state court and the bankruptcy court did not address identical issues, the Trust contends that "the State Court Action determined what Frank Welte owed to the Rand Estate while the Bankruptcy Court determined how much, if any, of the debt to the Rand Estate, was secured by the Trust." Doc. 19 at 11. This overview of the ultimate outcome of each proceeding is far too general. Both courts expressly stated that, in the course of their respective analyses, they were deciding the validity of the dragnet clauses in the mortgages that Claire signed as Trustee. Both courts reviewed the same loan documents, including the face amounts of the notes and the dragnet clauses set forth in each mortgage.

Regardless of any of the Trust's other arguments about whether or not Claire had the power to secure Frank's loans with the Trust farmland or whether he understood the documents he signed them, the state court had already ruled on the other dispositive issues. The court determined that the dragnet clauses were valid and had already determined the amounts owed on the notes before the bankruptcy court conducted its hearing and, ultimately, reached the opposite conclusions. The state court and the bankruptcy court decided identical issues.

---

[5] The bankruptcy court then addressed the issue of how to apply the payments to each note, ultimately applying those payments on a first-in-time basis based on Iowa caselaw. *Id.* at 17.

### b. Raised and litigated in the prior action

The state court observed that "[t]he issue in this case is whether all the disbursements are subject to the terms of the notes and whether the mortgages referenced above secure all of the debt, including the amounts advanced in excess of the face amount of the notes." Doc. 13-1 at 13. Frank raised the same argument to the state court that the Trust argued to the bankruptcy court: the notes had already been satisfied because he repaid more than the face amount of the notes. This argument invokes the critical issue of whether the excess advances were validly secured by the dragnet clauses and what effect that determination has on the total amount owed. In the bankruptcy court, the Trust raised the argument that the Estate did not have standing to assert a claim in the bankruptcy because there was no debt remaining to be paid.

Under Iowa law, an issue is raised and litigated when it is "submitted for determination through a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, a motion for summary judgment, a motion for directed verdict, or their equivalents, as well as on a judgment entered on a verdict." *Soults Farms*, 797 N.W.2d at 105 (cleaned up). The defendants to the Foreclosure Action raised and litigated the issue of whether the excess loan amounts were secured by the loan documents, implicating the validity of the dragnet clauses. This issue was raised, litigated and ruled on in the state court proceedings.

### c. Material and relevant to the disposition of the prior action

The state court's analysis centered squarely on the validity of the dragnet clauses and whether they validly secured the excess advances provided to Frank Welte beyond the face amounts of the notes. This issue was material and relevant to the state court's ruling in the prior action.

### d.    Necessary and essential to the judgment in the prior action

The state court had to decide whether the dragnet clauses were valid in order to determine the total amount due on the loans and securing mortgages. The resolution of this issue "was essential to the judgment" in the prior action. *Soults Farms*, 797 N.W.2d at 106.

### e.    Full and fair opportunity to litigate

While Iowa courts "no longer require mutuality between the parties, we generally restrict its use only against a party, or one in privity with a party, to the prior suit." *Clark*, 955 N.W.2d at 465. Privity "exists when the party against whom issue preclusion is invoked was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution." *Id.* (cleaned up). "The most general independent concern reflected in the limitation of issue preclusion by the full and fair opportunity requirement goes to the incentive to litigate vigorously in the first action." *Winger v. CM Holdings, L.L.C.*, 881 N.W.2d 433, 453 (Iowa 2016) (citing 18 Charles A. Wright, et al., *Federal Practice and Procedure* § 4423, at 612 (2d ed. 2002)). "Thus, courts will decline to apply issue preclusion when the party to be precluded lacked an incentive to litigate in the prior proceeding." *Id.* at 452 (explaining that issue preclusion should not be used when the first action involves small or minimal damages).

The Trust argues that it "did not have a full and fair opportunity to litigate the issues in the State Court action" because "Frank Welte apparently did not argue regarding the extent of the Debtor's liability to the Rand Estate, as there is no mention of it in the State Court's Ruling." Doc. 19 at 12. The Estate points out that the Trust was a party to the Foreclosure Action until eight days before trial, when it sought bankruptcy protection, and argues:

> the Trust and Frank shared an interest in defeating the enforceability of the dragnet clauses and in seeking a finding that the debt secured by the

20

> mortgages had already been paid. Frank's interest in attempting to prove
> that no further debt remains owing and that the dragnet clauses were
> unenforceable is not simply close to that of the Trust, Frank's interest is
> identical to the interest of the Trust.

Doc. 18 at 13. Because Frank is the sole beneficiary of the Trust, the Estate argues that the two parties had the same pecuniary interest in invalidating the dragnet clauses and limiting Roger's loans to the facial amounts listed on the notes. *Id.* at 13-14. This is because Frank's brother Claire, as Trustee, was authorized to pay net income and principal to Frank as deemed necessary. *Id.* at 14. This net income and principal include income derived from the Trust farmland Claire pledged as Trustee to secure the loans Roger repeatedly made to Frank. *Id.*

The Estate notes that Frank likely had more pressure to defend against the foreclosure because he "was at risk to have a personal judgment entered against him for a vast sum of money" and he "was also at risk to lose significant other property that had been pledged as collateral by him and the other borrower entities that Frank owned/controlled." *Id.* at 14. The Estate also points out that Frank and Roger personally negotiated the loans and had more knowledge of the transactions than the Trust, such that "Frank was better equipped, and had equal or more motivation than the Trustee, to strenuously defend against the foreclosure." *Id.* at 15. The Estate also notes that Frank continued to defend his interests after the state court ruled against him, as he filed a motion for a new trial, appealed to the Iowa Court of Appeals and then sought further review by the Iowa Supreme Court. *Id.*

As discussed above, the defendants to the Foreclosure Action argued "that since [the Estate] admits that the Defendants have repaid more than the face amount of each note, . . . the notes must have been satisfied." Doc. 13-1 at 13. The Trust made the identical argument to the bankruptcy court, asserting that "the mortgages must be limited to no more than the note amounts" and "the underlying debt has in fact, already been paid in full." Doc. 2-1 at 98. During the bankruptcy hearing, the Trust listed one of its

arguments as: "the debt that [the Estate is] alleging has already been paid off based on [the Trust's] calculations of how that debt has accumulated over the years." Doc. 2-2 at 9. The bankruptcy court confirmed that "[t]he Trust argues that even if the mortgages are valid to some degree, they are limited to no more than the face value of the notes." Doc. 2-1 at 100.

Clearly, "it is a due process violation for a litigant to be bound by a judgment when the litigant was not a party or a privy in the first action and therefore never had an opportunity to be heard." *Harris v. Jones*, 471 N.W.2d 818, 820 (Iowa 1991). That is not the situation here. The close relationship between Frank as the sole Trust beneficiary and his brother Claire as the Trustee authorized to pay Frank income and principal derived from the mortgaged farmland weighs heavily in favor of finding privity. The Trust was so connected in interest with Frank as to have had a full and fair opportunity to litigate the dragnet clause issue.

### f. *Other circumstances that would justify relitigation*

The Estate asserts that this final, "other circumstances" element "primarily protects defendants from the offensive use of issue preclusion when the prior proceeding is unreliable because of legal procedure or changed legal circumstances." Doc. 18 at 15 (quoting *Soults Farms*, 797 N.W.2d at 106). The Estate asserts that there are no such factors present in this case and the Trust does not argue otherwise.

If anything, the circumstances of this case weigh heavily against granting the Trust occasion to relitigate the issues. The Trust could have participated in the Foreclosure Action trial but elected to file its bankruptcy petition just eight days before trial. While that strategic decision eliminated the Trust as a party to the Foreclosure Action, the Trust's interests and Frank's interests are strongly intertwined and Frank litigated the relevant issues vigorously in the state court. There is no justification for allowing the Trust to use the federal courts to take a second bite of the apple.

22

## IV. CONCLUSION

For the reasons set forth herein, I find that the Iowa state court's judgment in *Security Nat'l Bank of Sioux City v. Welte*, No. EQCV174899 in the Iowa District Court for Woodbury County, as affirmed by *Security Nat'l Bank of Sioux City v. Welte*, No. 20-0524, 2021 WL 2453107 (Iowa Ct. App. June 6, 2021), is entitled to full faith and credit in the federal courts pursuant to 28 U.S.C. § 1738. I further find that under Iowa's preclusion law, the Iowa state court's findings concerning the enforceability of the mortgages' dragnet clauses and that the amounts due and owing under the relevant promissory notes are entitled to preclusive effect.

As such, the bankruptcy court's ruling (Doc. 1) granting the Trust's objection to the Estate's proof of claim is **reversed** and this case is **remanded** to the bankruptcy court for further proceedings consistent with this order.

**IT IS SO ORDERED.**

**DATED** this 22nd day of September, 2022.

_____
Leonard T. Strand, Chief Judge